**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NATIONAL FIRE & MARINE INSURANCE
COMPANY,

      Plaintiff,

vs.                               No. 1:25-cv-00126-DHU-SCY

THE RIO AT RUST CENTRE, LLC; WSQUARED
ENTERPRISES, LP; ONPOINTE HEALTH
MANAGEMENT, LLC; ONPOINTE BUSINESS
SERVICES, LLC; JERRY WILLIAMSON; HORACE
WINCHESTER, JR.; KRISTINA SCHMIDT; REHAB
SUITES AT LAS ESTANCIAS, LLC; FIESTA PARK
HEALTHCARE, LLC; ENCHANTED HEALTH
DEVELOPMENT, LLC;

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the court on two motions filed by Plaintiff National Fire &

Marine Insurance Company ("National Fire"). First, National Fire seeks Summary Judgment

against the three individual defendants in this matter: Jerry Williamson, Horace Winchester, Jr.,

and Kristina Schmidt. *See* Doc. 60. Second, National Fire seeks Default Judgment against the

corporate defendants,[1] all of whom have failed to appear or file a responsive pleading to date. *See*

Doc. 66. The Court, having reviewed the pleadings, both motions and related materials, and being

fully advised of the premises, finds that both motions should be **GRANTED IN PART** and

**DENIED IN PART**.

---

[1] The "corporate defendants" are all unincorporated associations (LLCs or LPs), not corporations.
For ease of reference, this opinion will refer to them as the corporate defendants.

# I.
# BACKGROUND

National Fire, a surplus lines insurance company, issued a liability policy to OnPointe Management, Inc. ("OnPointe"). Doc. 27 (Am. Compl.) at ¶ 61. The Policy includes professional liability coverage subject to a $100,000 per event self-insured retention ("SIR") for "loss" and "claims expense," as defined by the Policy. *Id.* at ¶ 63. This means that OnPointe was required to pay $100,000 in loss and claims expenses before the insurance policy would cover any loss or claims expense. The Medical Protective Company ("MedPro"), an affiliate of National Fire, functioned as the third-party administrator for the Policy and entered into a Claims Services Agreement ("CSA") with OnPointe. *Id.* at ¶¶ 65-66. Under the CSA, MedPro would manage the adjustment, investigation, and handling of claims under the Policy for which OnPointe was required to pay "loss" and "claims expenses" within the SIR. *Id.* at ¶ 66.

Several professional liability claims were brought against OnPointe, and MedPro engaged counsel to defend the insureds named as defendants in these cases. *Id.* at ¶¶ 69-70. As alleged in the Amended Complaint, OnPointe repeatedly failed to pay the defense counsel retained by MedPro for their work on these cases and failed to pay for other "claims expenses" associated with these cases, as required by the SIR and the CSA. *Id.* at ¶ 71. MedPro has sent multiple notices of breach, some of which OnPointe seemed to acknowledge, yet OnPointe has allegedly failed to cure its breaches and comply with the terms of the Policy and the CSA. *Id.* at ¶¶ 72-75.

National Fire filed suit in this Court, seeking the interpretation of the Policy and a declaration of its rights and obligations thereunder with respect to three professional liability lawsuits filed against its insureds. Specifically, National Fire asserts it should owe no duty to indemnify or defend these cases because that duty does not arise unless and until OnPointe satisfies the applicable SIR. *Id.* at ¶ 80. National Fire asks for a declaration to this effect, as well as a

declaration stating it is entitled to its "claims expense" and "loss," including attorney's fees. *Id.* at 20.

National Fire served the Defendants and later moved for Default Judgment against three of them. Docs. 23-25. However, National Fire subsequently amended its Complaint after being ordered to do so by Magistrate Judge Yarbrough. Docs. 26, 27. New summonses were issued as to each of the Defendants, except two—since dismissed from the suit—who waived service.[2] Docs. 32, 33. Summonses were returned executed for all Defendants except for Kristina Schmidt. It is unclear whether she was ever served. All other Defendants had an answer deadline sometime in June of 2025.

On May 13, 2025, Defendants AnnMarie Dvorak, Rebecca Vigil, Helen Theresa Hollan,[3] Kristina Schmidt, Horace Winchester, and Jerry Williamson submitted a "Notice of Non-Opposition and Reservation of Rights." Doc. 28. The Notice points out that the underlying lawsuits for which National Fire seeks declaratory judgment as to its rights and duties have been dismissed, and no active litigation is pending against these individual defendants. *Id.* at 2. The individual defendants named in the Notice indicated they do not oppose Plaintiff's request for a declaration that it owes no duty to defend or indemnify with respect to the dismissed lawsuits. *Id.* The individual defendants, however, "take no position at this time on the applicability of the insurance policy beyond those dismissed cases and expressly reserve all rights thereunder." *Id.*

On October 7, 2025, National Fire filed a Motion for Summary Judgment against Defendants Horace Winchester, Jr., Jerry Williamson, and Kristina Schmidt, the individual

---

[2] Several defendants were dismissed from this suit after the Amended Complaint was filed. This Order only discusses service as it relates to the defendants who remain in the suit and are thus subject to the motions now before the Court.

[3] These first three defendants were named in the Original Complaint but were removed from the case in the Amended Complaint.

defendants remaining in the case.[4] Doc. 60. National Fire contends that there are no genuine issues of material fact, as the individual defendants subject to this Motion have indicated they do not oppose the relief requested in Plaintiff's Amended Complaint. *Id.* at 2. The Motion goes on to describe the individual defendants' refusal to participate in this litigation.[5] *Id.* at 3. In the Motion, National Fire asserts that OnPointe failed to pay $60,322.20 in attorney's fees for the underlying professional liability cases. Doc. 60 at 6 (citing Affidavit of Leticia Press ¶ 15). In addition, National Fire states it settled the underlying cases and paid settlement amounts totaling $447,500.00. *Id.* (citing Press Aff. ¶ 16). All in all, according to National Fire, OnPointe paid only $68,599.50 of the $300,000 combined SIR for the three cases. *Id.* (citing Press Aff. ¶ 17). Accordingly, Plaintiff asserts that OnPointe was obligated by the policy and the CSA to pay an additional $231,400.50 to satisfy the SIR. *Id.* (citing Press Aff. ¶ 18). An updated affidavit broke down the claim expenses and loss paid for each of the three underlying cases, confirming that the total amount owed by OnPointe is $231,400.50. *See* Doc. 78 at ¶ 19 (Supplemental Affidavit of Leticia Press).

The individual defendants were served the Motion for Summary Judgment by U.S. mail. They did not respond to the motion, and the time to do so has expired.

---

[4] The Motion for Summary Judgment contained some contradictory information, some of which suggested that Kristina Schmidt was included in the motion and some of which suggested she was not. Plaintiff filed a Notice of Errata clarifying that it does seek summary judgment against Kristina Schmidt as well. Doc. 68.

[5] After seeking clarification from counsel for the individual defendants on whether they would be participating further in the litigation, National Fire was told that defense counsel was not authorized to file anything further with the Court. Doc. 60 at 3. The individual defendants declined to participate in preparation of the Joint Status Report and Proposed Discovery Plan filed by Plaintiff on July 25, 2025. *Id.* On August 7, 2025, counsel for the individual defendants filed a Motion to Withdraw as Counsel and indicated that these defendants do not intend to engage in discovery, respond to scheduling orders, or otherwise litigate the declaratory coverage issues. Doc. 53. The Court granted defense counsel's Motion to Withdraw. Doc. 58.

After a status conference held on October 8, 2025, this Court denied National Fire's first Motion for Default Judgment and granted them leave to re-file to reflect updated service of the Amended Complaint. To date, none of the corporate defendants have filed answers, motions, or otherwise appeared in this case. Also on October 8, 2025, the Clerk's Office filed an Entry of Default as to all corporate defendants remaining in the case: Enchanted Health Development, LLC; Fiesta Park Healthcare, LLC; OnPointe Business Services, LLC; OnPointe Health Management, LLC; Rehab Suites at Las Estancias, LLC; The Rio at Rust Centre, LLC; and WSquared Enterprises, LP. Doc. 63. National Fire then filed a renewed Motion for Default Judgment against these corporate defendants on October 27, 2025. Doc. 66. The motion was served by U.S. mail upon the corporate defendants and/or their agents. The Court held a hearing on the renewed motion on May 6, 2026.

## II.
## LEGAL STANDARDS

### A. Default Judgment

A defendant must serve an answer within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). When a defendant fails to answer, Federal Rule of Civil Procedure 55 establishes a two-step process for default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default has been entered, a judgment must be entered by the clerk only if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1). In all other cases, the party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). The court may conduct hearings when, to enter or effectuate judgment, it needs

to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. *Id.*

Even when a party has failed to appear or respond, the Court has an affirmative duty to ensure it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). Once it does so, the Court must next determine whether the well-pled allegations of the complaint, taken as true, state a claim for relief. *Nevada Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018) (Armijo, J.). The trial court has broad discretion in deciding whether to enter a default judgment. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

**B. Summary Judgment**

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Typically, a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular materials in the record. Fed. R. Civ. P. 56(c)(1). Under the District of New Mexico's local rules, failure to respond in opposition to a motion within the time prescribed constitutes consent to grant the motion. D.N.M.LR-Civ 7.1(b). In the summary judgment context, though, the Tenth Circuit has stated that summary judgment is not proper merely because the nonmovant failed to file a response. *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). Summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). *Id.* "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.*

6

## III.
## DISCUSSION

### A. Jurisdiction

"A judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams*, 802 F.2d at 1202. To issue either default judgment or summary judgment, then, the Court must have both subject matter jurisdiction over the case and personal jurisdiction over the relevant defendants. Regarding subject matter jurisdiction, the Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a)(1). Based on the allegations in the Amended Complaint, Plaintiff National Fire is incorporated and has its principal place of business in Nebraska, making it a "citizen" of Nebraska. The Defendants are largely citizens of Texas and New Mexico, by virtue of their domicile (individuals) or the citizenship of their members and managers (corporate defendants).[6] A few of the corporate defendants also have members/managers who are citizens of Tennessee, Oregon, and Washington, but no corporate or individual defendant is a citizen of Nebraska. The Plaintiff is therefore not a citizen of any of the states in which any Defendant is a citizen, satisfying the first requirement of § 1332 jurisdiction.

In addition, the total amount in controversy exceeds $75,000. "In an action seeking declaratory and injunctive relief, the amount in controversy is measured by the value of the object of the litigation." *Phelps Oil & Gass, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (citation and internal quotation marks omitted). The insurance policy coverage at issue in this action has a per event limit of $1,000,000 and an aggregate limit of $3,000,000, which are subject to a $100,000 per event Self-Insured Retention. Doc. 27 at ¶ 53. And Plaintiff claims in its Motion

---

[6] For diversity jurisdiction purposes, LLCs and other unincorporated associations are citizens of every state of citizenship of any of its members. *Mgmt. Nominees, Inc. v. Alderney Investments, LLC*, 813 F.3d 1321, 1323-25 (10th Cir. 2016).

for Summary Judgment against the individual defendants that OnPointe was short of satisfying the SIR in the underlying cases by a combined amount of $231,400.50. *See* Doc. 60 at 6-7 (citing Affidavit of Leticia Press). These numbers demonstrate that the "value of the object of the litigation" exceeds $75,000. The Court therefore has subject matter jurisdiction to hear this case.

At the hearing on May 6, 2026, the Court discussed its concerns regarding personal jurisdiction with the Plaintiff. National Fire seemingly acknowledged that it may not have properly served Defendants Kristina Schmidt and WSquared Enterprises, LP. Doc. 77 at 2 (Clerk's Minutes for Hearing). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987);[7] *see also Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter asserts jurisdiction over the person of the party served."). Accordingly, the Court likely cannot exercise personal jurisdiction over these two defendants.

National Fire was able to assuage the Court's concerns about personal jurisdiction over the remaining defendants. Jerry Williamson and Horace Winchester, Jr., two of the individual defendants against whom summary judgment is sought, undoubtedly come within the personal

---

[7] *Omni Capital* is not entirely clear about whether a defendant must actually be served or simply be amenable to service in order for the Court to exercise personal jurisdiction. *See* 484 U.S. at 104 ("[B]efore a court may exercise personal jurisdiction over a defendant," there "must be a *basis* for the defendant's *amenability* to service of summons.") (emphasis added). Under the latter standard, there likely is personal jurisdiction over Schmidt, who, as alleged in the Amended Complaint, is a resident of New Mexico and therefore amenable to personal service in New Mexico. However, multiple courts in this District have adopted the rule that personal jurisdiction requires valid service of process. *See Williamson v. Sena*, 229 F.R.D. 663, 667 (D.N.M. 2005) (Browning, J.); *Century Bank v. Art Finance Funding (IX), LLC*, 2025 WL 2017132, at *4 (D.N.M. July 18, 2025) (Ritter, J.) (PFRD adopted after no objections).

jurisdiction of this Court. Both Williamson and Winchester are citizens of Texas, but they consented to this Court's jurisdiction by appearing in the lawsuit and filing a "Notice of Non-Opposition." *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("[A]n individual may submit to the jurisdiction of the court by appearance.").[8]

Each of the remaining corporate defendants, according to National Fire, operated and conducted businesses in New Mexico, were insureds under the relevant Policy, and were sued in New Mexico state court in the underlying cases that are the subject of this suit, which relate to events stemming from their business operations in New Mexico. Doc. 77 at 1. Regardless of the citizenship of the corporate defendants, some of whom could be considered "at home" in New Mexico anyway, the Court is satisfied that the corporate defendants have "purposefully availed" themselves of New Mexico's laws and therefore have the sufficient minimum contacts with this forum necessary to establish specific personal jurisdiction.

### B. Default Judgment

Procedurally, the requirements for default judgment have been met as to all the corporate defendants except for WSquared Enterprises, LP.[9] All of the remaining corporate defendants were served by certified mail through either a partner of the association or through a registered agent, which is permitted under the Federal Rule of Civil Procedure governing service. Specifically, Federal Rule of Civil Procedure 4(h)(1) states that a corporation or other unincorporated

---

[8] Kristina Schmidt also joined in that filing, arguably consenting to jurisdiction, and she is a resident and citizen of the state of New Mexico, making her "at home" within this jurisdiction. However, the filings in this case do not show that Schmidt was ever served with process, which, as discussed above, precludes this Court's exercise of jurisdiction over her.

[9] National Fire served WSquared Enterprises, LP through Horace Winchester. The certified mail receipt was returned, but it was unsigned. This is not sufficient to show proper notice and an opportunity to answer. As discussed above, this also undermines the Court's personal jurisdiction over this defendant. The Court will therefore deny the Motion for Default Judgment as to WSquared Enterprises, LP.

association may be served in the manner prescribed by Rule 4(e)(1) for serving an individual or by delivering a copy of the summons and complaint to an officer, managing general agent, or any other agent authorized by appointment or by law to receive service of process. Rule 4(e)(1), in turn, allows service in accordance with state law, which provides for service by mail, so long as the envelope is addressed to the defendant and the defendant or an agent authorized to accept service of process signs a receipt for the envelope or package containing the summons and complaint. Rule 1-004(E)(3), NMRA.

Horace Winchester, Jr. accepted service on behalf of OnPointe Health Management, LLC and Enchanted Health Development, LLC, as evidenced by Proof of Service documents filed in this Court showing returned certified mail receipts signed by Winchester. Docs. 43, 44. Winchester is a member of both of these entities, so service on these two defendants complies with both the federal and state rules governing service. Answers for OnPointe Health Management and Enchanted Health Development were due on June 13, 2025. *See id.* To date, neither defendant has filed an answer or any other responsive pleading.

Rehab Suites at Las Estancias, LLC, Fiesta Park Healthcare, LLC, and The Rio at Rust Centre, LLC, were each served through their registered agent, Incorp. Services, Inc. *See* Docs. 30, 31, 32. A signed certified mail receipt was returned and included in the Proof of Service documents filed with the Court. *Id.* This complies with the requirements for service under the federal rules. These three defendants' answers were due on June 4, 2025, and to date, no responsive pleading has been filed.

Plaintiff attempted service on OnPointe Business Services, LLC, via one of its members, Jerry Williamson. *See* Doc. 37. A certified mail receipt was returned signed by an individual named Andrea Benison. *Id.* It is not clear who Andrea Benison is and whether she is authorized to accept

10

service for OnPointe Business Services. However, Jerry Williamson, as an individual defendant, was also served with a copy of the summons and complaint. Doc. 38. His copy was delivered to the same address one day after the copy addressed to OnPointe Business Services was delivered, and he personally signed the certified mail return receipt. *Id.* The Court finds this information sufficient to presume that Jerry Williamson also received service of process on behalf of OnPointe Business Services, in accordance with Federal Rule 4. The Answer for OnPointe Business Services was due June 5, 2025, but no responsive pleading was ever filed.

As required by Rule 55(a), the Clerk of Court issued an entry of default as to the corporate defendants after it was shown, "from the files and records of this Court," including an affidavit from Plaintiff, Doc. 61, that these defendants had failed to plead or otherwise defend the lawsuit. Doc. 63. National Fire then moved for default judgment from this Court under Rule 55(b)(2). Doc. 66. The motion certifies that each corporate defendant was served a copy of the motion via U.S. mail. To date, no defendant has responded to National Fire's Motion for Default Judgment.

Having established that the procedural requirements for default judgment have been met, the Court must now consider whether the allegations in the Amended Complaint, taken as true, state a claim for relief that entitles the Plaintiff to default judgment. *Nevada Gen. Ins. Co.*, 326 F.R.D. at 693. The Court finds that they do.

National Fire first seeks a declaration that it has no obligation to defend or indemnify with respect to the underlying professional liability cases due to OnPointe's failure to satisfy the SIR and prejudicing its ability to investigate, defend, and/or manage those cases. New Mexico substantive law governs this issue. *Liberty Mut. Fire Ins. Co. v. Lyons*, 489 F.Supp.3d 1242, 1247 (D.N.M. 2020), *aff'd*, 2021 WL 4592269 (10th Cir. Oct. 6, 2021). Under New Mexico law, "an insurance policy is a contract and is generally governed by the law of contracts, and the rights and

duties of the parties are to be determined by its terms." *Thompson v. Occidental Life Ins. Co.*, 1977-NMCA-071, ¶ 4, 90 N.M. 620, 567 P.2d 62, *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977).

The plain language of the Policy requires OnPointe to satisfy the SIR before National Fire has a duty to defend or pay claims, including professional liability claims, made under the Policy. Doc. 27 at 42, 54. The Policy also requires cooperation from the insureds, *id.* at 48, and has an exclusion for "any claim or potential claim that the company was unable to timely investigate or defend due to the acts or omissions of any insured[,]" *id.* at 44. The Amended Complaint alleges that in three professional liability cases against the defendants, OnPointe repeatedly failed to pay defense counsel retained by MedPro, the administrator, for the underlying cases or to pay for other "claims expenses" associated with the cases, which it was required to do up to the SIR amount under the Policy. *Id.* at ¶ 71. The Complaint also alleges that OnPointe failed to otherwise assist and cooperate with MedPro in the defense of these claims. *Id.* at ¶ 75. The Amended Complaint asserts that National Fire should owe no duty to indemnify or defend with respect to the underlying cases because that duty does not arise unless and until OnPointe satisfies the applicable SIR. *Id.* at ¶ 80. Based on the allegations in the Amended Complaint and the language of the policy, the Court can find that OnPointe has not complied with its obligation to meet the SIR and that National Fire is not obligated to defend or indemnify until it does so.

National Fire next asks for a declaration that National Fire has no duty to indemnify with regard to the underlying claims any amount in excess of the limit of liability. This is also evinced by the plain language of the policy, which states that National Fire "will pay on behalf of any insured all loss and claims expense . . . up to the Limits of Liability shown on the Declarations with respect to" professional liability claims. *Id.* at 54. The policy further states that National Fire has no duty to "defend an insured after the applicable Limits of Liability have been exhausted by

the payment of loss or claims expense." *Id.* at 42. This request for relief is therefore warranted as well.

Lastly, in its Amended Complaint, National Fire requests a declaration from this Court that it is entitled to its "claims expense" and "loss," including attorney's fees. The Policy defines "loss" as civil damages, including prejudgment interest, which an insured becomes legally obligated to pay through adjudication or settlement. *Id.* at 39. "Claims expense" is defined to include all costs and expenses incurred in connection with the investigation, adjustment, and defense of any claim or potential claim. *Id.* at 35. Such expenses and costs include attorney's fees paid to the law firm selected to defend an insured but does not include attorney's fees awarded to a claimant. *Id.* at 35-36. The policy further states that National Fire "shall have a duty to pay loss and claims expense only in excess of the . . . Self-Insured Retention." *Id.* at 47. And National Fire "has complete discretion to pay the entire loss and claims expense and seek reimbursement from the first named insured for the Self-Insured Retention." *Id.* As alleged, OnPointe has not exhausted the SIR under the policy. *Id.* at ¶ 79. The Court clarified this at the hearing and received an updated affidavit from Leticia Press, a Claims Division Manager at MedPro. *See* Doc. 78. The affidavit specifies that, for the three underlying cases, National Fire paid $69,789.40 in claims expenses and $447,500 in loss, and OnPointe only paid $68,599.50 of that between the three cases—well below the SIR in each case. *Id.* at ¶ 19. The Court therefore finds that National Fire is entitled to $231,400.50 in claims expenses and loss, combined. This represents the total combined balance remaining in the SIRs for the three underlying cases.

## C. Summary Judgment

In a summary judgment motion, the moving party bears the initial burden of showing there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law. Once this burden is met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). If a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion and may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3). The Tenth Circuit has made clear that failure to respond to a motion for summary judgment, on its own, is not grounds for granting the motion. *Murray*, 312 F.3d at 1199-1200. However, consistent with Rule 56(e), by failing to file a response, the nonmovant "confesses all facts asserted and properly supported in the motion." *Id.* at 1199. Accordingly, when a nonmovant fails to respond to a motion for summary judgment, summary judgment is only appropriate when the moving party has met its initial burden of production under Rule 56(c). *Id.* at 1200.

Here, the individual defendants did not respond to National Fire's Motion for Summary Judgment. Prior to the motion, they filed a "Notice of Non-Opposition" indicating they do not oppose the specific relief requested in the Amended Complaint. Doc. 28. Because they failed to respond, and consistent with their non-opposition to the relief requested, the Court can consider the facts properly asserted and supported in National Fire's motion to be undisputed. The question then becomes whether National Fire met its burden of production, supporting its asserted undisputed facts and demonstrating that it is entitled to judgment as a matter of law.

National Fire largely repeats as its undisputed facts the allegations included in its Amended Complaint. Each of these is supported by evidence in the record—namely, the relevant insurance policy and Claims Services Agreement, as well as an affidavit from a claims division manager at MedPro. These undisputed facts show that:

14

1. National Fire issued a liability policy to OnPointe Management with effective dates of July 29, 2017 to July 29, 2018. Doc. 60-1 at 9-101 (Exhibit D at 003).

2. Coverage under the policy is subject to a per event limit of $1,000,000 and an aggregate limit of $3,000,000, which are in excess of and subject to a $100,000 per event/$Nil aggregate self-insured retention ("SIR") for "loss" and "claims expense." Doc. 60-1 at 10-11 (Ex. D at 003-004).

3. OnPointe was the first named insured on the policy and obligated to pay the "claims expense" and "loss" for the underlying cases at issue in this suit until the applicable SIR amount is exhausted. Doc. 60-1 at 9, 33 (Ex. D at 003, 027).

4. Through its affiliate third-party administrator, MedPro, Plaintiff also entered into a Claims Services Agreement (the "CSA") with OnPointe, which confirmed and expanded OnPointe's obligation to pay for what the CSA referred to as "Allocated Claims Expenses" up to the limit of the SIR. Doc. 60-1 at 102-110 (Exhibit E).

5. Winchester and Williamson are both members of OnPointe.

6. While the policy and the CSA were in effect, three lawsuits were filed—each of which alleged claims of professional liability against OnPointe and certain defendants to this action. Doc. 27 at ¶ 1 (citing the underlying cases); Doc. 60-1 at 112 (Exhibit F, Affidavit of Leticia Press ¶ 6).

7. Upon receipt of these cases, MedPro engaged defense counsel to defend the named insureds in each case. Doc. 60-1 at 112 (Press Aff. ¶ 8).

8. OnPointe repeatedly failed to pay defense counsel retained by MedPro for their work on the underlying cases and pay for other "claims expenses" associated with the underlying cases. Doc. 60-1 at 112 (Press Aff. ¶ 9).

9. Despite attempts from MedPro to secure compliance, OnPointe failed to pay outstanding invoices from defense counsel totaling $60,322.20 in attorney's fees. Doc. 60-1 at 112 (Press Aff. ¶¶ 11-15).

10. Defense counsel in each of the underlying cases withdrew due to OnPointe's failure to pay outstanding invoices and failure to cooperate with defense of the case. Doc. 60-1 at 112 (Press Aff. ¶ 14).

11. To obtain dismissal of the underlying cases, National Fire paid settlement amounts to the plaintiffs in those actions, totaling $447,500. Doc. 60-1 at 113 (Press Aff. ¶ 16). These amounts are "loss" as defined by the policy. Doc. 60-1 at 25 (Ex. D at 019).

12. National Fire incurred both "claims expenses" and "loss" due to OnPointe's breaches of the policy and CSA. Doc. 60-1 at 113 (Press Aff. ¶ 18).

13. OnPointe paid only $68,599.50 of the aggregated $300,000 SIR for the three underlying cases. Doc. 60-1 at 113 (Press Aff. ¶ 17); *see also* Doc. 78 at ¶ 19 (showing the amounts paid by National Fire and OnPointe, respectively, in each of the three underlying cases).

These facts are supported by the record and, as explained above, entitle National Fire to the declaratory judgment it seeks against Defendants Jerry Williamson and Horace Winchester, Jr. However, summary judgment is not appropriate against Defendant Kristina Schmidt, who was never served in this matter.

### IV.
### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that National Fire's Motion for Summary Judgment (Doc. 60) is **GRANTED** as to Jerry Williamson and Horace Winchester, Jr. but **DENIED** as to Kristina Schmidt. **IT IS FURTHER ORDERED** that National Fire's Motion for

16

Default Judgment (Doc. 66) is **DENIED** as to WSquared Enterprises, LP but **GRANTED** as to the remaining corporate defendants: The Rio at Rust Centre, LLC; OnPointe Health Management, LLC; OnPointe Business Services, LLC; Rehab Suites at Las Estancias, LLC; Fiesta Park Healthcare, LLC; and Enchanted Health Development, LLC. The Court will enter judgment accordingly by separate order.

       **IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

17